IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Vanessa Nolan, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 25 CV 4338 |
| ) | |
| City of Chicago and Chicago Police Officers, ) | |
| Matthew Shea, Star #2121, Carl Williams, Star ) | |
| #17554, and Chad Cwik, Star #18893 ) | |
| Defendants. ) | JURY DEMANDED |

**FIRST AMENDED CIVIL COMPLAINT**

NOW COMES Plaintiff, VANESSA NOLAN, by and through her attorney, Abby D. Bakos of Bakos Law, LLC, complaining against Defendants City of Chicago and Chicago Police Officers Matthew Shea Star #2121, Carl Williams Star #17554, and Chad Cwik Star #18893 as follows:

**INTRODUCTION**

1. This action, arising out of the unlawful arrest and detention of Plaintiff Vanessa Nolan, is brought pursuant to 42 U.S.C. § 1983 to address deprivations of Ms. Nolan's rights under the Constitution of the United States.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

**THE PARTIES**

3. The Plaintiff, Vanessa Nolan, resides in Illinois.

4. Defendant Chicago Police Officers were at all relevant times duly appointed police officers of the City of Chicago acting within the scope of their employment and under color of law.

1

They are being sued in their individual capacities.

5. Defendant City of Chicago is a municipal corporation duly incorporated under the laws of the state of Illinois and is the employer of Defendant Officers.

**FACTS**

6. On or about April 21, 2024, at approximately 12:45 a.m., Defendant Officers responded to a domestic disturbance call made by Plaintiff's husband, Eleazar Nolan, and proceeded to Plaintiff's residence located at 8201 S. Harper Ave., Chicago, Illinois 60619.

7. At the time, Plaintiff was a cadet in the police academy a few weeks away from taking her state examination to become a Chicago Police Officer.

8. Plaintiff is currently a Chicago Police Officer.

9. Defendant Officers Williams and Cwik were the first officers to arrive on scene.

10. Plaintiff informed Defendants Williams and Cwik that she and Mr. Nolan had a verbal argument in the car earlier that evening.

11. Plaintiff further stated that Mr. Nolan threw her phone out of the vehicle's window during the argument. Plaintiff exited the vehicle, retrieved her phone and called a friend to pick her up while Mr. Nolan proceeded to the couple's residence.

12. By the time Defendants Williams and Cwik arrived, Plaintiff's friend had dropped her off at the residence to retrieve her things.

13. As Defendants Williams and Cwik entered the residence, Plaintiff was in the process of packing her belongings to leave the marital home and stay with her mother. She informed the officers of her intention.

14. Defendants Williams and Cwik allowed Plaintiff to finish packing.

15. With Defendant Williams and Cwik's permission and assistance, Plaintiff then exited the

home and sat in her vehicle which was parked in front of her home.

16. By this time, several additional officers had arrived on scene and were generally standing between the front door of the residence and Plaintiff's vehicle.

17. While Plaintiff was sitting in her running vehicle, at Plaintiff's request, Defendant Williams went into the house and retrieved Plaintiff's duty firearm and uniform for her.

18. The officer placed those items in Plaintiff's trunk and told Plaintiff to stay in her vehicle until the Sergeant arrived. Plaintiff readily complied staying seated in the vehicle.

19. While Plaintiff was still seated in her running vehicle, Defendant Williams assured Plaintiff that she need not be concerned about her position at CPD based on the incident and asked Plaintiff if she needed anything else from the residence.

20. Plaintiff asked Defendant Williams to retrieve her boots from the residence.

21. Defendant Williams agreed and took Plaintiff's house keys, which were attached to her car keys, at that time and proceeded to walk back towards the house to retrieve her boots. Before he was able to get there, Defendant Sergeant Shea arrived on scene.

22. Defendant Williams explained to Defendant Shea that Mr. Nolan had alleged that Plaintiff was threatening Mr. Nolan and being "belligerent." However, the officers explained that they were unable to ascertain the nature of the threat or 'belligerent" behavior from Mr. Nolan.

23. Defendant Williams and/or Defendant Cwik told Defendant Shea that they believed that Mr. Nolan was intoxicated, but Plaintiff was not.

24. More specifically, Defendant Williams and/or Defendant Cwik informed the Defendant Shea that they, "[saw] no indication that [Plaintiff] was under the influence" of any intoxicants.

25. The officers on-scene further informed Shea that, "[w]hen [the officer] was looking at [Plaintiff]. [Plaintiff] was looking straight at [the officer]. [Plaintiff] seem[ed] completely

3

fine."

26. When directly asked by Defendant Shea whether Plaintiff was intoxicated, the officers' response was, "No. [Plaintiff] is not intoxicated at all."

27. When Defendant Shea questioned Mr. Nolan, Mr. Nolan told Defendant Shea that Plaintiff had not been drinking, had not assaulted or battered him and he did not want to press charges of any kind against Plaintiff.

28. Despite this, pursuant to Special Order S08-01-10, Defendant Shea informed Plaintiff that she was required to submit to a breathalyzer test and field sobriety test at the station - not for a criminal investigation, but for an administrative investigation based on her role as a police cadet.

29. Plaintiff was then transported to the 4th District Station for an internal affairs investigation.

30. While at the station, Plaintiff was forced to submit to a breathalyzer and field sobriety test.

31. Plaintiff passed the breathalyzer test with a reading of .049.

32. Pursuant to the body-worn camera video of the field sobriety test, Plaintiff appears completely sober, following directions, walking with ease and stability at all times.

33. Despite this, Defendants pursued false charges of Driving Under the Influence under 625 ILCS 5/11-501(A)(2) and under 625 ILCS 5/11-501(A)(1).

34. Plaintiff was held at the station after she was processed until approximately 9:00am the following morning.

35. All charges against Plaintiff were dismissed on June 11, 2024 in a manner indicative of innocence.

36. Plaintiff was terminated from the CPD academy in the spring of 2024.

37. Plaintiff was rehired by CPD after her charges were dismissed, but not until December 8, 2024.

4

38. Plaintiff obtained mental health treatment through EAP for her emotional distress resulting from the false arrest until she was terminated and lost her insurance coverage.

39. Plaintiff's attempts to get her record expunged have been unsuccessful thus far.

40. As a result of the foregoing, Plaintiff suffered emotional distress, embarrassment, humiliation, lost wages, loss of health insurance, towing fees, loss of liberty, loss of dignity, and loss of seniority at CPD which affects her ability to earn sick time, paid vacation and timely promotions.

## COUNT I
## 1983 FOURTH AMENDMENT
## UNLAWFUL SEIZURE/
## FALSE ARREST
**(Against All Individual Defendants)**

41. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

42. Defendant Officers, acting under the color of law, caused Plaintiff to be seized when the officers held Plaintiff at the station on false DUI charges through approximately 9am the following morning.

43. Defendant Officers did not have probable cause to believe that Plaintiff had committed a crime at any time.

44. In fact, the Defendants noted on video that they did not believe Mr. Nolan's allegation that Plaintiff threatened Mr. Nolan nor did they believe that Plaintiff was intoxicated. On the contrary, they believed that Mr. Nolan was intoxicated.

45. Defendant Officers did not have reasonable suspicion to believe that Ms. Nolan had or was about to commit a crime when she was forced to submit to a breathalyzer test or a field sobriety test at the station or any time thereafter.

46. Defendant Officers had no lawful justification to pursue criminal charges against Plaintiff for any crime whatsoever.

47. Defendant Officers, acting under the color of law, caused Ms. Nolan's vehicle to be seized when the officers had her vehicle impounded after falsely arresting her on two counts of DUI.

48. Defendant Officers did not have probable cause to believe that Plaintiff's vehicle was evidence of any crime when they ordered it seized.

49. In seizing Plaintiff's vehicle by towing it, without probable cause or other legal justification, Defendant Officers violated Plaintiff's Fourth Amendment rights.

50. The foregoing actions constitute deliberate indifference to Ms. Nolan's rights under the United States Constitution in violation of the Fourth Amendment.

51. Defendants' conduct was objectively unreasonable and undertaken intentionally with willful and wanton indifference to Plaintiff's constitutional rights.

52. As a result of the foregoing, Plaintiff suffered emotional distress, embarrassment, humiliation, lost wages, loss of health insurance, towing fees, loss of liberty, loss of dignity, and loss of seniority at CPD, which affects her ability to earn sick time, paid vacation and timely promotions.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, jointly and severally, for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs.

### COUNT II
### MALICIOUS PROSECUTION
**(Against All Individual Defendants)**

53. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

54. Defendants maliciously caused criminal charges to be commenced and continued against Plaintiff by creating false and incomplete police reports and swearing to false criminal charges.

55. There was no probable cause for the institution of criminal charges against Plaintiff.

6

56. The criminal charges against Plaintiff were disposed of in a manner indicative of Plaintiff's innocence.

57. Plaintiff sustained injuries including without limitation, emotional distress, humiliation, loss of liberty, loss of use and enjoyment of her vehicle, towing expenses, and mental anguish among others.

58. The misconduct undertaken by the Defendants was within the scope of their employment and under color of law.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs.

### COUNT III: 1983- SUPERVISORY LIABILITY
**(Against Defendant Shea)**

59. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

60. At all relevant times, Defendant Shea was the supervisor of Defendants Willams and Cwik.

61. Defendant Shea was personally involved in depriving Ms. Nolan of her constitutional rights in that he facilitated, approved of and condoned her unlawful arrest.

62. Defendant Shea's conduct was undertaken intentionally with malice, willfulness and reckless indifference to Plaintiff's rights.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Shea for anaward of reasonable compensatory and punitive damages, plus attorneys' fees and costs.

### COUNT IV: 1983- FAILURE TO INTERVENE
**(Against All Individual Defendants)**

63. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

64. Each individual Defendant had a reasonable opportunity to prevent one another from falsely arresting Plaintiff, but failed to do so.

65. As a result of the Defendant Officers' failure to intervene, Plaintiff suffered emotional

injuries as well as loss of liberty, and termination of employment as a Chicago Police Officer.

66. Defendant Officers' misconduct was objectively unreasonable and was undertaken intentionally with malice, willfulness and reckless indifference to Plaintiff's rights.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Officers, jointly and severally, for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs.

## COUNT V
## 745 ILCS 10/9-102- INDEMNIFICATION

67. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

68. At all relevant times, Defendant City of Chicago was the employer of Defendant Officers.

69. Defendant Officers committed the acts alleged above under color of law and in the scope of their employment as City of Chicago police officers.

70. In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

71. As a proximate cause of the unlawful acts of the individual Defendants, which occurred within the scope of their employment, Plaintiff was injured.

**WHEREFORE,** the Plaintiff demands that, should any individually named defendant be found liable on one or more of the claims set forth above, pursuant to 745 ILCS 10/9-102, Defendant City of Chicago, be found liable for any judgment Plaintiff obtains, as well as attorneys' fees and costs awarded.

## COUNT VI—*RESPONDEAT SUPERIOR*

72. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

73. In committing the acts alleged in the preceding paragraphs, the individual Defendants were agents of the City of Chicago and were acting at all relevant times within the scope of their

employment and under color of law.

74. Defendant City of Chicago is liable as principal for all torts committed by its agents.

**WHEREFORE**, should any of the individual Defendants be found liable on one or more of the state claims set forth above, Plaintiff demands that, pursuant to *respondeat superior*, Defendant City of Chicago be found liable for any compensatory judgment Plaintiff obtains against said Defendant(s), as well as costs awarded.

### JURY DEMAND

Plaintiff requests trial by jury.

### NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorneys' fees have been assigned to counsel.

Respectfully submitted,

/s/ Abby D. Bakos
Abby D. Bakos, Esq.

Bakos Law, LLC
1776A S. Naperville Road
Suite 100
Wheaton, Illinois 60189
630-259-1129
abby@bakos.law